LOVE, Superintendent of Banks, *v.* PEOPLE'S COMPRESS CO.*

(Suggestion of error overruled. Dec. 22, 1924.)

[102 So. 275. No. 24449.]

1. WAREHOUSEMEN. *Rights of holder of negotiable warehouse receipt stated.*

The holder of a negotiable warehouse receipt acquires such title to the goods for which the receipt was issued as the person negotiating the receipt had the ability to convey, and it is the duty of the warehouseman to hold possession of the goods for which the re-

ceipt was issued for the holder of the receipt as fully as if the receipt had¬been issued directly to him. Section 41, chapter 218, Laws of 1920 (Hemingway's Supplement of 1921, section 7957o1).

2. Warehousemen. *Warehouseman held not relieved from accounting to holder of receipt for value of goods seized on attachment.*

A warehouseman who has issued a negotiable receipt for goods, and thereafter suffers them to be taken from his possession under a writ of attachment issued in a proceeding to which the holder of the receipt is not a party, without taking up and canceling the receipt therefor, is not relieved because of the seizure of the goods from accounting to the holder of the receipt for the value of the goods. Section 25, chapter 218, Laws of 1921 (Hemingway's Code Supplement of 1921, section 7957y).

---

*Headnotes 1. Warehousemen, 40 Cyc., pp. 419, 443; 2. Warehousemen, 40 Cyc., p. 443.

Suit by J. S. Love, Superintendent of Banks, in charge of liquidation of the Farmers' Bank of Boyle against the People's Compress Company. Judgment for defendant. On suggestion of error. Suggestion of error overruled, and prior opinion withdrawn.

*Ward Allen,* for appellant.

The only point presented for decision by this court is whether or not such a lawsuit as that described by appellee and to which appellant was in no way a party or had any knowledge thereof, is a defense against negotiable receipts issued by a warehouseman under our Uniform Warehouse Receipts .Law, said receipts being in the hands of an innocent holder for value. If such a lawsuit is a defense, we respectfully submit that this law is vitiated and of no avail.

We have made a careful search of the authorities and have been able to find only the following cases which give us any light on this controversy. . *Commercial National Bank* v. *Canal Louisiana Bank & Trust Co.,* 60 L. Ed. 417, 36 Sup. Ct. 194, 239 U. S. 520, 1917-E

Ann. Cas. 25; *Manufacturing Mercantile Co.* v. *Monarch Refrigerating Co.*, 266 Ill. 584, 107 N. E. 885; *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co.*, 97 So. 526; *Brown Mercantile Co.* v. *Yielding Brothers Department Store*, 200 Ala. 412, 76 So. 4; *Campbell* v. *Farmers Bank of Boyle*, 90 So. 436.

*Cutrer & Smith*, for appellee.

The sole question for the determination of the court is whether or not the issuance of a negotiable warehouse receipt for cotton delivered to it by a tenant, and negotiated by the tenant to a bank, unknown to the warehouseman, can and does, so far as the holder of the receipt is concerned, release and discharge the landlord's lien; or, conversely; whether or not the landlord's lien obtains against the physical cotton in the possession of a warehouseman, even though a receipt has been issued for the cotton, and negotiated by the depositor. We insist that *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co.* (Miss.), 97 So. 526, settles this question. In that case, the court held that one who acquires negotiable warehouse receipts for cotton stored by a mortgagor, when the mortgage or deed of trust has been duly recorded prior to the negotiation of the warehouse receipts, acquired no rights thereby in derogation of the rights of the mortgagee.

Therefore, if, as in this case, the tenant in the first instance, had no right or ability to convey the cotton to a purchaser in good faith, for value, then the holder of the receipt acquired thereby no greater right nor title than the tenant at that time had to convey. It would be useless to cite authorities in this state that no tenant has a right to dispose of the agricultural products raised on the leased premises, and defeat the landlord's lien. This proposition is admitted by appellant. "One who has no title to chattels cannot transfer title unless

he has the owner's authority or the owner is estopped, and in the absence of circumstances creating an estoppel, one without title cannot transfer it by the simple device of warehousing the goods and indorsing the receipts." *Brown Merc. Co.* v. *Yielding Bros. Dept. Store,* 200 Ala. 212, 76 So. 4. The supreme court of this state had an opportunity at the October term, 1921, to pass specifically on the question here presented to the court, in the case of *Campbell* v. *Farmer's Bank of Boyle,* 127 Miss. 668, 90 So. 436.

Counsel, however, attempts to distinguish these cases from the case at bar, on the ground that in the *Pender* v. *Cowgill case,* pleaded in bar of this cause of action, there may be some infirmities in the landlord's lien that would not exist between the landlord and tenant, and that the appellant should have been given the right to plead such infirmities, and defend the said suit, and the Compress Company should not be allowed to deliver the cotton to anyone who merely claims a deed of trust, or a landlord's lien, until the Compress Company has ascertained what might be the rights of the holder of the negotiable receipts issued by the Compress Company. That not being a party to the case of *Pender* v. *Cowgill,* appellant had no opportunity to pass his claim, and, therefore, the case is not binding on appellant, nor is it obtainable as a defense by way of special plea to the cause of appellant against appellee, for failure to deliver to appellant the cotton covered by the warehouse receipts.

We say there is no law included in the statutes of this state, on the Negotiable Warehouse Receipts Act, or otherwise, which would compel a warehouseman to comb the face of the earth, in an effort to ascertain the possible holder of a negotiable warehouse receipt issued by them for the purpose of asking them whether or not the warehouseman should deliver the cotton to the person which a court of competent jurisdiction has

ordered and adjudged, that it shall be delivered. It would be an impossible task to bring into court parties holding negotiable warehouse receipts, for the obvious reason that the warehouseman has not the remotest conception or idea as to who may be the holder of the receipt.

Counsel misconceives the marked difference between a right *in rem* and a right *ad in rem*. A right *in rem* constitutes a present subsisting and existing right in and to the particular thing, such as ownership, or a lien on the particular personal property sought to be subjected. A right *ad in rem* is nothing more than a right to pursue the thing for the purpose of subjecting some other right; that is to say, a money judgment. A replevin suit, for example, alleges an *in rem* right. A sale by execution for a mere enrolled personal judgment, is an effort to enforce an *ad in rem* right. An enrolled judgment, for example, constitutes an *ad in rem* right against all property owned by the debtor, but does not constitute an *in rem* right in and to any particular property of which the debtor may be the owner.

As was held in *Simpson* v. *Smith Co.*, 75 Miss. 505, a judgment creditor with judgment duly enrolled, only acquired an *in rem* right in and to any specific property of the judgment debtor when the particular property is subjected and taken in execution.

Argued orally by *Ward Allen*, for appellant.

*Ward Allen*, in reply for appellant.

Appellee's brief is remarkable in two particulars. First, we notice he violates a cardinal rule of construction which requires that we look at any statute in its entirety when we seek to place an interpretation on it. We contend that one of the prime purposes of the Uniform Receipts Law is to preserve and enhance the

negotiable and commercial aspect of warehouse receipts. We arrive at this conclusion by looking at the entire law. Appellee seeks to isolate certain sentences from this statute and to have the court decide this case on his interpretation of these isolated sentences, and without reference to the great purpose of the statute. Appellee is merely seeking to have this court engraft an exception upon the statute and upon the construction of the statute which promotes the negotiable and mercantile aspect of warehouse receipts. Such exceptions should not be lightly engrafted upon the law.

The second remarkable feature of appellee's brief is that it attempts to becloud the real issue in this case by dwelling long and earnestly upon propositions which were already admitted in our original brief.

Appellee attempts to explain away the effect of the Illinois desiccated egg case by differentiating between a right *in rem* and a right *ad in rem* and says that we are confusing these two rights. We deny that any such confusion exists in our minds, but we do not see but that we are as much entitled to plead and defend against an asserted right *in rem* as against an asserted right *ad in rem*. We think our negotiable receipts entitle us to face any claimant of title to our property, regardless of whether or not the claimant chooses to describe himself with Latin phrases. We do not see why a right *in rem* cannot be attacked as well as a right *ad in rem* but neither can be attacked unless an opportunity is given one to make an attack.

We again insist that to hold contrary to our contention in this case is to nullify this statute in the state of Mississippi.

SMITH, C. J., delivered the opinion of the court.

The appellant is in charge of the liquidation of the Farmers' Bank of Boyle, Miss., and brought this suit in

the court below to recover from the People's Compress Company, a corporation doing a warehouse business, the value of six bales of cotton stored with the Compress Company, for which it issued negotiable receipts, of which the bank became the holder for value without notice on December 4, 1920, which are now held by the appellant.

The appellee filed a special plea in bar by which it set up that the cotton was seized and taken from its possession by virtue of a writ of attachment issued in a proceeding begun on May 4, 1921, wherein the plaintiff claimed, and the court held, that the cotton was grown by one Cowgill on land leased to him by the plaintiff, and who was indebted to the plaintiff in the sum of six hundred dollars for the payment of which the plaintiff had, under the statute, a landlord's lien on the cotton. The plea does not allege that the appellant or the Farmers' Bank was a party to the proceeding in which the cotton was seized, or that either of them had notice thereof. A demurrer to this plea was overruled, the appellant declined to plead further, and judgment final was rendered against him.

On a former day we reversed the judgment of the court below for a reason which the appellee very earnestly suggests was erroneous, and since the record presents another question, the answer to which will require a reversal of the judgment and therefore the overruling of this suggestion of error, we will withdraw the former opinion, and decide that question, which is, Can the appellee excuse its failure to deliver the cotton to the appellant by showing that it was taken from it by judicial process?

When the appellant became the holder of the receipts for the cotton it acquired such title to the cotton as the person negotiating the receipts to it had the ability to convey, and it became the appellee's duty to hold possession of the cotton for him "as fully as if" it "had con-

tracted directly with him." Section 41, chapter 218, Laws 1920 (Hemingway's Supplement of 1921, section 7957o1). At common law a "bailee is excused from returning the subject-matter of the bailment where the goods are taken from him by authority of law exercised through regular and valid proceedings," of which the bailor had notice or of which the bailee had made a reasonable effort to notify him. 6 C. J. 1141, 40 Cyc. 443; 3 R. C. L. 89; *Mortimore* v. *Ragsdale,* 62 Miss. 86. Since the plea does not aver that the appellant had notice of the proceeding in which the cotton was seized, or that the appellee made any effort to notify him thereof, it would seem that it presents no defense even at common law.

But be that as it may, the case is controlled by the Uniform Warehouse Receipts Act, which appears as chapter 218, Laws 1920 (chapter 186A, Hemingway's Supplement of 1921, under sections 10, 11, and 25 of which Hemingway's Code Supplement of 1921, sections 7957j, 7957k, and 7957y), the appellee became liable to the appellant for a conversion of the cotton when it surrendered the possession thereof to the officer who served the writ of attachment without taking up and canceling the receipts issued therefor.

Under section 25 goods for which a negotiable receipt has been issued " cannot thereafter, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined." The writ of attachment therefore conferred no authority of the officer serving it to seize the cotton until the receipts therefor issued by the appellee had been surrendered or their negotiation enjoined; consequently the seizure of the cotton by him was a mere trespass to which the appellee should not have acceded. If the seizure was made over the appellee's protest, it should have interposed a claim

for the cotton in the proceeding in which the attachment writ was issued, which claim under the statute must have been allowed by the court.

This is the clear meaning of the statute, and is also the interpretation placed thereon by the supreme court of Illinois in *Manufacturers' Mercantile Co.* v. *Monarch Refrigerating Co.*, 266 Ill. 584, 107 N. E. 885, several years prior to its enactment by the Mississippi Legislature.

We are not here concerned with what the rights of the appellee in this connection would be had it notified the bank of the seizure of the cotton under the attachment in time for it to have interposed a claim thereto, or if the appellant had itself interposed such a claim, which the court erroneously disallowed; no such question being presented by the plea.

Stress is laid by counsel for the appellee on the fact that the plea alleges that the cotton was seized in a legal proceeding wherein the plaintiff claimed, and the court decided, that he had a landlord's lien on the cotton, to which character of lien the title of the holder of a negotiable warehouse receipt was held to be subordinate in *Campbell* v. *Farmers' Bank,* 127 Miss. 668, 90 So. 436, but that the court so decided in the proceeding in which the cotton was seized cannot avail the appellee here, for the existence of a landlord's lien on the cotton and the rights of the appellee that grow thereout must be established in a proceeding to which the appellant is a party before he can be affected thereby.

The suggestion of error will be overruled, but the opinion hereinbefore rendered will be withdrawn.

*Overruled.*