188 So. 64

**FIRST NAT. BANK OF GUNTERSVILLE**
v. BAIN et al.
8 Div. 953.

Supreme Court of Alabama.
April 13, 1939.

D. Isbell, of Guntersville, for appellees.

J. A. Lusk & Son, of Guntersville, for appellant.

BOULDIN, Justice.

The sole question presented on this appeal is the amount of indebtedness secured by mortgage upon real estate executed by W. N. Bain and Bessie A. Bain, his wife, to First National Bank of Guntersville, Alabama, of date March 5, 1925.

The opening paragraph of the mortgage, the consideration clause, reads:

"Know all Men by these presents, that W. N. Bain and Bessie A. Bain his wife, being justly indebted to the First National Bank of Guntersville, Ala., in the sum of Seven thousand five hundred and

No/100 Dollars ($7,500.00) evidenced by a Promissory note, dated March 5th, 1925 and due on the 1st day of June, 1925 for Seven thousand Five hundred and No/100 payable to the said First National Bank of Guntersville, Ala., and in consideration thereof, and to secure the payment of the same, and any other indebtedness owing by the said W. N. Bain to the grantee before the full payment of this mortgage."

This is followed by the usual granting clause.

A reference to the register, among other things, directed him to ascertain and report the amount of this mortgage indebtedness. He reported the mortgage "was given to secure only $7500.00, it not being the mutual intention of the contracting parties to secure more by said mortgage."

By a supplemental report, there appears the following:

"The Register further shows for the purpose of clarifying the foregoing report and to make his meaning clear shows to the court that he has come to the conclusion from the testimony that the First National Bank at the time of the execution of the mortgage of W. N. Bain and wife to the First National Bank on March the 5, 1925, the said bank had or was carrying three indebtednesses against W. N. Bain;

"(1) An indebtedness against W. N. Bain alone that amounted to and is evidenced by note No. 7605 dated March 5, 1925 for $7500 which was secured by the mortgage recorded in book 71 page 130.

"(2) Another indebtedness spoken of in the testimony as the 'Grizzell indebtedness' evidenced by notes of Ewing Grizzell and endorsed by W. N. Bain, all of which were taken up by a note of W. N. Bain on March 1, 1928 for $6179.95 by note No. 7667.

"(3) Still another indebtedness spoken of in the testimony as the indebtedness of Bessie A. Bain evidenced by divers notes given by her and indorsed by W. N. Bain and finally taken up by the note of W. N. Bain on March 1, 1928 by note No. 7666 for $5215.30.

"The Register is convinced and finds from the testimony that the indebtedness called the 'Grizzell Indebtedness' and the Bessie A. Bain notes set out in paragraphs (2) and (3) respectively above were not secured by the mortgage of W. N. Bain to the First National Bank recorded in book 71 page 130 for the fact found by him that it was the mutual understanding of the contracting parties, in said mortgage to secure only the indebtedness of W. N. Bain as set out in paragraph (1) above.

* * * * * *

"The Register further finds that said mortgage to said First National Bank did not secure any future advances to be made to said Bain by the said Bank such not being in the mutual contemplation of the contracting parties at the time of the execution of said mortgage."

The real controversy is whether the indebtedness evidenced by the two notes given by W. N. Bain, March 1, 1928, and renewed from time to time is secured by the mortgage still held by the Bank. Without dispute the $7500 personal indebtedness of W. N. Bain at the date of the mortgage has never been paid in full, but was also renewed from time to time. The report, confirmed by the court, found the amount of that indebtedness as of January 1, 1938, to be $9811.70, with an additional sum as an attorney's fee.

When a mortgage sets out and defines a specific indebtedness secured thereby, provisions extending the security to other indebtedness in general terms were formerly viewed with disfavor. They may serve to take advantage of the confiding or the illiterate.

But it is now the settled law of Alabama, and throughout this country, that clear and express provisions extending the security to other existing indebtedness or to future indebtedness between the same parties are given full effect. Indeed, it is held on high authority, that in many cases it would be a great hardship if this rule did not obtain as regards future indebtedness incurred or assumed by the mortgagor. For example, a bank customer, having occasion in his business operations, to obtain frequent loans, may thus avoid the necessity of giving repeated mortgages.

Such mortgages have become a recognized form of security. 19 R.C.L. p. 295, § 68; Note, Ann.Cas.1913C, 552, 553.

In Collier v. White, 97 Ala. 615, 12 So. 385, 386, this court held "A provision in a chattel mortgage reciting that it secures a note and any other amount the mortgagor may owe the mortgagee in the year it is made, is valid and secures every character

of indebtedness by the former to the latter arising during the year."

■ The mortgage need not specify any particular sum. Even as to third persons, this court has said: "If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a bona fide purchaser." Lovelace v. Webb, 62 Ala. 271, 281.

To like effect, see Thomas v. Blair et al., 208 Ala. 48, 93 So. 704; Davis et al. v. Elba Bank & Trust Co. 216 Ala. 632, 114 So. 211; Luverne Land Co. et al. v. Bank of Luverne, 200 Ala. 85, 75 So. 461; Guaranty Sav. Bldg. & Loan Ass'n v. Russell, 221 Ala. 32, 127 So. 186; Morgan County Nat. Bank v. Terry, 213 Ala. 313, 104 So. 762; Note, 81 A.L.R. 631.

■ The words "and any other indebtedness owing by the said W. N. Bain to the grantee before the full payment of this, mortgage" are clear and unambiguous. This is a contractual stipulation. Its limitations are that such debts shall be "owing by said W. N. Bain," and he must owe them before "full payment of this mortgage." In other words, when he comes to satisfy and obtain a surrender of this security, he must pay any other indebtedness he then owes the bank. It is a prospective security in this regard.

It will be noted the register found that under the evidence, the intention was to secure only the personal debt of $7500 then owed by W. N. Bain. He expressly finds there was no undertaking to secure future advances.

The defeasance clause of the mortgage reads: "Upon condition, however that upon the payment of the indebtedness hereby secured, this conveyance to be void, payment of taxes and insurance, the satisfaction of prior incumbrances and other loans and advances to the mortgagor by the mortgagee before the full settlement and payment of this mortgage and all expenses of recording are to be a part of this mortgage indebtedness."

■ We have conceded the more usual and appropriate place for such stipulation to be in the consideration clause, else the instrument may mislead. Guaranty Sav. Bldg. & Loan Ass'n v. Russell, supra.

Here, the stipulation is in both the consideration clause and the defeasance clause. The latter clause is intended to define the terms and conditions upon which the mortgage shall be satisfied, cease to be security for debt, and become void. It may be misleading, if it does not sufficiently indicate the debts to be paid before the mortgage ceases to be effective as security. The two clauses are to be construed together as part of one instrument, one contract.

It may be conceded that at the time this mortgage was given the indebtedness of Mrs. Bain and of Mr. Grizzell were not regarded as part of the present indebtedness "owing by said W. N. Bain."

It appears Grizzell was engaged in the mule business, in which Bain was interested. Mrs. Bain was engaged in farming operations. Each had a line of credit at the bank with the backing of the indorsement of W. N. Bain on their notes. At the time the land mortgage here involved was given, the Grizzell indebtedness had been renewed in one note, indorsed by W. N. Bain, which was not then due. Mrs. Bain's indebtedness was in like form. Bain's obligation on both notes was that of indorser, a conditional and contingent liability. If a debtor owes several notes, and gives a mortgage expressly securing one, any intention to cover other existing notes should be quite clear and explicit, to say the least.

■ It has been observed that the amount of recording tax paid may be evidence that only the indebtedness expressly named is secured. Payment of the recording tax on $7500 only is evidence that these notes of Mrs. Bain and Mr. Grizzell were not treated at the time as debts owing by W. N. Bain. But this does not warrant the striking out the express terms of the mortgage securing any and all debts owing by W. N. Bain before full payment of the mortgage.

■ When, in course of business, these other debts were not paid by the primary debtors, and they were taken up by W. N. Bain, giving his personal note, they did become indebtedness owing by him as per the express terms of the mortgage. The loans owing by others, secured by his indorsement, then became his loans.

■ It appears the business of taking the mortgage and negotiations touching same were conducted by an officer of the bank, who has since died. Mr. and Mrs.

Bain were, therefore, incompetent to testify touching transactions with or statements by him while acting for the bank. Code, § 7721; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co., 87 Ala. 305, 6 So. 196; First Nat. Bank of Talladega v. Chaffin et al., 118 Ala. 246, 24 So. 80; Metcalf v. Montgomery, Superintendent of Banks et al., 229 Ala. 156, 155 So. 582.

It is a well recognized rule that the consideration of a note or mortgage is open to full inquiry. The true consideration, within recognized limitations, may be fully shown. This rule, however, does not nullify the other well known rule that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument. This rule lies at the foundation of the sanctity of the written instruments as the true memorial of transactions. The stipulation that a mortgage shall secure future debts of the mortgagor is contractual. Wilkerson v. Tillman, 66 Ala. 532, 537; Baker v. Horsley, 212 Ala. 181, 101 So. 830.

A statement of the mortgagor that he did not read the instrument, and did not know of its contents, by a witness otherwise competent, cannot serve to strike out such stipulation. The law provides an appropriate remedy by reformation, with the proper safeguards defining such remedy, if there be a mutual mistake, or fraud on the part of one and mistake on the part of the other.

It may be pointed out that this form of security was customary with this bank. The record discloses a long list of notes, with blank forms for mortgages therein, executed from year to year by Mr. Bain, in which a like stipulation appears.

We are fully mindful of the rule that on controverted issues of fact, the finding of the register who sees and hears the witnesses is accorded the same weight as the verdict of a jury.

The register's views of the law, however, when he is called upon to decide same on a reference has no such effect.

In this case, we are impressed there was no substantial legal evidence supporting his finding.

His finding must be regarded as a mistake of law, a misconception of the legal effect of the express stipulations of the mortgage.

The decree confirming the report of the register is reversed, the report set aside, and the cause remanded for further proceedings in accord with this opinion.

Reversed, rendered, and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.