232 So.2d 342

## CITY NATIONAL BANK OF DOTHAN, a National Banking Institution

v.

## The FIRST NATIONAL BANK OF DOTHAN, a National Banking Institution.

4 Div. 382.

Supreme Court of Alabama.

Feb. 26, 1970.

Richard H. Ramsey, III, J. Huntley Johnson, Dothan, for appellant.

Farmer & Herring, Dothan, for appellee.

BLOODWORTH, Justice.

This is an appeal by City National Bank from a judgment establishing the priority of notes and mortgages held by First National Bank over notes and mortgages held by City National Bank, and awarding First National Bank the proceeds of its mortgage foreclosure sale.

The facts of the case were stipulated. J. Lee Benton and wife executed and delivered to the First National Bank three promissory notes prior to July 8, 1965. On that date they executed notes and a first mortgage on certain real estate to First National securing $12,000. On the same day, they executed and delivered a note and second mortgage on the same property to one Stewart B. Carter securing $2,000, which note and mortgage were assigned to City National Bank. Subsequently, the Bentons executed and delivered to City National Bank another note and third mortgage on the same real estate securing $20,000. After the execution of those mortgages, the Bentons gave another promissory note to First National Bank in the sum of $5,053. Thus, three notes to First National Bank were made prior to the date of execution of the notes and first mortgage, and one note to it was executed subsequent to the City National mortgages.

The first mortgage to First National contained the following language:

"KNOW ALL MEN BY THESE PRESENTS, that being indebted to THE FIRST NATIONAL BANK OF DOTHAN by 2 notes of even date herewith and due, respectively, as follows, to-wit:

\* \* \* \* \* \*

"\* \* \* and for the purpose of securing the payment thereof, together with additional amounts furnished me, or either of us, or which I, or either of

us owe, or may owe on any account to said THE FIRST NATIONAL BANK OF DOTHAN, its successors or assigns before such debts are fully paid, in money or otherwise, we *J. Bee Benton and wife, Myrtle M. Benton* do hereby grant, bargain, sell and convey to THE FIRST NATIONAL BANK OF DOTHAN, * * *.

* * * * * *

" * * * and this debt, together with all other debts and obligations that I, or we, owe or may hereafter owe to the said THE FIRST NATIONAL BANK OF DOTHAN, under this instrument or otherwise shall be also secured by the said mortgage or lien, * * * IT IS CONTEMPLATED THAT SAID BANK WILL MAKE ADDITIONAL ADVANCES.

" * * * AND IF I OR WE SHOULD PROCURE MORE MONEY OR BECOME INDEBTED TO THE SAID BANK, ITS SUCCESSORS OR ASSIGNS, IN EXCESS OF THE AMOUNT HEREIN STATED BEFORE THE PAYMENT THEREOF, I HEREBY EXPRESSLY AGREE THAT SUCH DEBT SHALL BE AND THE SAME IS HEREBY MADE A PART OF THIS MORTGAGE DEBT, WITH ALL THE RIGHTS, POWER AND AUTHORITY, AS TO THE COLLECTION AND FORECLOSURE HEREIN EXPRESSED, * * *."

This mortgage was foreclosed by First National Bank and bid in by the buyer for the sum of $18,900. First National continues to hold the amount received at the sale and declines to pay anything to City National Bank, maintaining it is entitled to all of the foreclosure funds which were less than the total amount of its notes plus expenses and attorneys' fees.

City National filed a bill for declaratory judgment claiming it is entitled to all of the proceeds received by First National at the foreclosure sale above the actual amount of the notes executed contempo-

raneously with the first mortgage plus the foreclosure expenses and attorneys' fees. The trial court ruled adversely to City National, holding that First National's mortgage also secured the three promissory notes made prior to its execution, and the First National note made subsequent to the City National mortgages. Thus, the trial court concluded that First National's notes and first mortgage had priority over the notes and mortgages executed by City National. All mortgages were duly recorded.

The third mortgage, to City National, contains the following provision:

"This mortgage is given * * * subordinate to that certain mortgage from J. Lee Benton to First National Bank of Dothan * * *."

It was expressly stipulated by the parties that each of the promissory notes and real estate mortgages expressed the intention of the parties to the notes and mortgages. It was also stipulated that each party had notice of the mortgages of the other as is provided by the recording laws.

The questions on this appeal involve priority of the notes and mortgages, specifically: Does the First National note executed subsequent to the two junior mortgages to City National constitute an "advance" secured by the lien of the First National mortgage and therefore superior to the junior mortgages? Are the three "antecedent" notes to First National secured by the lien of its mortgage?

Appellant City National's contentions are: That First National was entitled to satisfy only the balance of the amount actually advanced under its first mortgage at the time of its execution, notwithstanding that the mortgage contained both a conglomerate and additional advance clause; and, that City National is entitled to have its second and third mortgages satisfied from the balance of the proceeds of the sale.

■ Appellant City National admits it is well settled that parties may agree in

the mortgage instrument that a mortgage stand for both antecedent and subsequent debts. But, it argues such mortgage provisions do not permit advances to take precedence over an intervening junior lien when the advances are not made until after attachment and notice of the junior encumbrance.

Appellee First National contends: That because of the conglomerate and advance clauses in its first mortgage; the stipulation that all notes and mortgages expressed the intention of the parties thereto; and, City National's notice of the first mortgage; it is entitled to apply the proceeds of the sale to all of the notes held by it, whether executed prior or subsequent to its first mortgage.

We agree with First National's contentions, being of the opinion that all of its notes are secured by its mortgage and that it is entitled to all of the proceeds from the foreclosure sale.

Alabama has long been committed to the proposition, as expressed by the late Justice Bouldin in the leading case of First National Bank of Guntersville v. Bain, 237 Ala. 580, 582, 188 So. 64, 66, viz:

> "* * * it is now the settled law of Alabama, and throughout this country, that clear and express provisions [in a mortgage] extending the security to other existing indebtedness or to future indebtedness between the same parties are given full effect. * * *"

The rationale for this rule, J. Bouldin says, is:

> "* * * that in many cases it would be a great hardship if this rule did not obtain as regards future indebtedness incurred or assumed by the mortgagor. For example, a bank customer, having occasion in his business operations, to obtain frequent loans, may thus avoid the necessity of giving repeated mortgages."

The court further pointed out that:

> "The mortgage need not specify any particular sum. Even as to third persons, this court has said: 'If it contains enough to show a contract that it is to stand as a security to the mortgagee for such indebtedness as may arise from future dealings between the parties, it is sufficient to put a purchaser or incumbrancer on inquiry, and, if he fails to make it in the proper quarter, he cannot claim protection as a bona fide purchaser.' Lovelace v. Webb, 62 Ala. 271, 281."

This case has been consistently followed by this court. See, Martin v. First National Bank of Opelika, (1966) 279 Ala. 303, 184 So.2d 815, wherein the language in the mortgage as to "advances" was:

> "Now, therefore, in consideration of the premises and of said indebtedness and in order to secure the prompt payment of the same according to the terms and stipulations contained in said note, *and to secure any other amount that the mortgagee or his assigns may advance to the mortgagor before the payment in full of said mortgage indebtedness*, the said mortgagors, Hughie Martin and Colie Lee Martin, husband and wife, hereby grant, bargain, sell * * * (Emphasis ours.)"

The "advance" to the husband in this case (although the wife and husband were joint mortgagors) was held to be covered by the lien of the mortgage. The court said:

> "* * * [that the wife] by signing the mortgage which was properly acknowledged and executed * * * thereby consented to be bound by the terms of the mortgage for any advance that might be made to her, or her husband, or to both jointly, when such advance was made 'before the payment in full of said mortgage indebtedness.' "

Our Alabama decisions comport with the majority rule in other states.

In 36 Am.Jur., Mortgages, § 233, p. 807, it is said:

"* * * The diversity of opinion on the question of the rights of mortgagees in mortgages to secure future advances, as against the owners of subsequent interests in the mortgaged property, is not so pronounced in the case of advances made by the mortgagee without notice of a subsequent encumbrance, under which circumstances there is general agreement in support of the proposition that in the absence of notice of an inferior lien, the holder of a mortgage for future advances may continue to treat the property as free from subsequent encumbrance, and therefore can safely make further loans to the debtor. * * *"

An extensive annotation on the subject: "Optional advance under mortgage as subject to lien intervening between giving of the mortgage and making the advance" appears at 138 A.L.R. 566. At page 579, it is stated:

"The rule laid down in most jurisdictions is that an advance, though purely optional, made pursuant to a mortgage of which subsequent parties had record, or other sufficient notice, is a lien or charge superior to an encumbrance intervening between the giving of the mortgage and the making of the advance, if the mortgagee had no knowledge and no actual notice of the intervening encumbrance. It is to be observed that such rule, where actually applied, has usually been invoked to deny effect to mere record notice of the intervening encumbrance, without the sufficiency of any other form of constructive notice having been at issue."

■ The stipulation of facts in this case does not show that the first mortgagee (First National) had any knowledge or actual notice of the intervening liens of City National before making the advance to the borrower. As noted in the annotation, constructive notice under the record-

ing statutes is deemed insufficient. Alabama appears to be in accord with this latter rule. See, Farmers' Union Warehouse Co. v. Barnett Bros., 223 Ala. 435, 137 So. 176. Also, Auburn Insurance Agency v. First National Bank of Auburn, (1955) 263 Ala. 30, 34–35, 81 So.2d 600, where this court said:

"We are not confronted with a situation where the first mortgage provides in general terms for future advances, without any obligation on the part of the mortgagee to make them, nor any necessity to do so in order to preserve the security from loss or deterioration or from being subjected to prior liens, but pursuant to that authority the mortgagee makes additional advances, accepted by the mortgagor, on the strength of that security *with actual knowledge when he does so that there is a second mortgage on the same property*. We referred to that state of facts in the case of Farmers' Union Warehouse Co. v. Barnett Bros., 223 Ala. 435, 137 So. 176. In that case no notice of the second mortgage was shown to have been given to the first mortgagee when the future advances were made. *The record of the second mortgage was not enough for that purpose*." [Emphasis supplied]

We might add that the provision as to antecedent debts and future advances is found in both the consideration and defeasance clauses in this case. This was also the situation in First National Bank of Guntersville v. Bain, supra, where this court gave effect to a provision in the consideration clause of a mortgage that it was to secure a certain indebtedness and "any other indebtedness owing by the said W. N. Bain to the grantee before the full payment of this mortgage." This court held under such provision that indebtedness created subsequently was secured by the lien of the mortgage.

■ We conclude, on the basis of these authorities, the language contained in the

several mortgages, and the stipulated facts, that the clear intention of the parties was that the lien of the first mortgage cover future advances; and, that the "advance" in question was given without First National's having knowledge or actual notice of the execution of the junior liens to City National.

We do not wish to be understood as holding in this case that City National's junior encumbrances would have priority over First National's senior encumbrance as to any "advance" made by the latter even though First National had knowledge or actual notice of the junior lien. For, that question is not presented to us in this case.

We note that City National had actual notice and knowledge of the lien of the first mortgage because a statement to that effect is contained in the third mortgage instrument.

■ Finally, as to the antecedent debts, we consider that the clear and explicit intention of the parties to the first mortgage was that it cover pre-existing indebtedness between the parties at the time of its execution.

In First National Bank of Guntersville v. Bain, supra, we said:

"* * * If a debtor owes several notes, and gives a mortgage expressly securing one, any intention to cover other existing notes should be quite clear and explicit, to say the least."

We conclude that the judgment appealed from ought to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.